MENZ BONNER & KOMAR LLP
By: David A. Koenigsberg (512715)
Two Grand Central Tower
140 East 45th Street, 20th Floor
New York, New York  10017
Tel.: (212) 223-2100
*Attorneys for Plaintiff-Relator
Hedy M. Cirrincione*



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------x
UNITED STATES OF AMERICA, ex rel.
Hedy M. Cirrincione,                          :

             Plaintiffs,                :    **AMENDED COMPLAINT
                                                    [UNDER SEAL]**

   - against-                                :

THOMAS HAMEL, ROBERT SCALISE,        :
WILLIAM SMITH, CAROL KENDALL,
INDIVIDUALLY AND AS EMPLOYEES OF   :
THE N.Y. STATE EDUCATION DEPARTMENT,      99 CV 2082 (GLS) (GJB)
THE NEW YORK STATE EDUCATION         :
DEPARTMENT, THE NEW YORK CITY
DEPARTMENT OF EDUCATION, BUFFALO   :
CITY SCHOOL DISTRICT, ELMIRA CITY
CENTRAL SCHOOL DISTRICT, ITHACA        :
CITY CENTRAL SCHOOL DISTRICT,
WATERTOWN CITY SCHOOL DISTRICT,     :
AND THE DEFENDANTS LISTED IN
APPENDICES A AND B,                             :

             Defendants.                  :
---------------------------------x

       Relator-Plaintiff Hedy M. Cirrincione ("Relator") through her attorneys Menz Bonner & Komar LLP, alleges as follows:

### I. NATURE OF THE ACTION

      1.     Plaintiff brings this action on behalf of the United States of America against the defendants to recover treble damages and civil penalties under the

False Claims Act, 31 U.S.C. § 3729-3733 (the "Act"). Relator alleges that the defendants have defrauded the federal government and the State of New York by submitting false claims for payment under the Medicaid program for speech pathology services under New York State's School Supportive Health Service Program. This action is related to the action pending in this Court entitled *United States ex rel. Hedy M. Cirrincione v. Larry D. Tingley, Jefferson County Community Services Board, Jefferson County, Ogdensburg City School District, and William Smith,* 98 CV 1929 (GLS). The Relator filed each action *pro se*.

## II. JURISDICTION

2.     The Court has subject matter jurisdiction to entertain this action under 28 U.S.C. §§ 1331 and 1345. The Court may exercise personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732(a) because at least one of the defendants resides or transacts business in the Northern District of New York, and at least one act proscribed by 31 U.S.C. § 3729 occurred in the Northern District of New York.

## III. VENUE

3.     Venue is proper in the Northern District of New York under 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) and (c) because at least one of the defendants resides or transacts business in the Northern District of New York.

## IV. PARTIES

4.     Relator Hedy M. Cirrincione ("Relator" or "Cirrincione") is an individual currently residing in the North Carolina. At all times relevant, Cirrincione resided in Watertown, New York and was the President of CREST Mainstream, Inc.,

Watertown, New York. Cirrincione brought this action and the related action against the defendants on behalf of herself and the United States.

5. Defendant Thomas Hamel at all times relevant was the Chief, Program Services Reimbursement Unit, New York State Department of Education ("NYSED"). Hamel is sued herein in his individual capacity.

6. Defendant Robert Scalise is an individual who at all times relevant was employed by the NYSED, Office of Special Education Services, and is sued herein in his individual capacity.

7. Defendant William Smith is an individual who at certain times relevant herein was employed by NYSED in the area of Medicaid in Education. Smith is sued herein in his individual capacity. After Smith retired from NYSED, Smith provided consulting services to school districts and municipalities to obtain Medicaid reimbursement for education related services.

8. Defendant Carol Kendall is an individual who at all times relevant was employed by the New York State Department of Education as Regional Associate, Jefferson County and is sued herein in her individual capacity.

9. The New York State Education Department is an agency of the State of New York responsible for assisting local school districts and municipalities operating programs to provide supportive health services and pre-school supportive health services programs.

10. The other defendants listed in the caption and in Appendices A and B to this Amended Complaint are the school districts, municipalities and county governments that have participated in New York State's School Supportive Health

Service Program and have submitted claims for reimbursement for speech pathology services as explained below.

## V.  FACTUAL ALLEGATIONS

11.    Pursuant to Title XIX of the Social Security Act, the Medicaid program pays the health care costs of persons qualified to receive benefits due to the person's medical condition, economic condition or other eligible factor. Medicaid costs are shared between the Federal Government and participating states.

12.    Section 411(k)(13) of the Medicare Catastrophic Coverage Act of 1998 (P.L. 100-360) authorized Medicaid payments for medical services provided to children under the Individuals with Disabilities Education Act through a child's plan. Covered services may include physical therapy, occupational therapy, speech pathology/therapy services, psychological counseling, nursing and transportation services.

13.    In New York State, the Department of Health is the State agency responsible for operating the Medicaid program.  Within the Department of Health, the Office of Medicaid Management is responsible for administering the Medicaid program. The Department of Health uses the Medicaid Management Information System, a computerized payment and information reporting system, to process and pay Medicaid claims, including school health claims.

14.    The New York State Department of Health and NYSED developed the State's school supportive health services and preschool supportive health services programs. Under the school program, 5 to 21-year old students receive health services

from their local school districts. Under the preschool program, 3 to 4-year old children receive school health services through county social service agencies.

15.     At all times relevant, the Federal share of school health claims was 50 percent. Under New York's Medicaid program, the Federal share is paid to the school health providers. The State's share is taken from the school district's or county's annual State education aid appropriation. In addition, the State takes back 50 percent of the Federal share from the school districts, leaving the school district and local governments with 25 percent of each claim submitted. The State also takes back 59.5 percent from the counties for preschool programs, leaving the counties with 20.25 percent of each claim submitted. To the extent that the United States provides Medicaid funds to the State of New York, the State of New York acts merely as a conduit for the payment of the Federal funds to the school districts and municipalities that seek Medicaid reimbursement for the payments the school districts and municipalities make to the school health providers for the health services rendered.

16.     Federal regulations require that in order for speech pathology services to qualify for reimbursement by Medicaid, there must be a referral from a physician or other licensed practitioner. 42 C.F.R. § 440.110(c). Prior to April 1995, only a physician could make the referral. New York State regulations also require a referral from a physician, physician's assistant, a registered nurse, a nurse practitioner, or a licensed speech-language pathologist.

17.     The Federal regulations further require that speech services are provided by or under the direction of a speech-language pathologist certified by the American Speech-Language-Hearing Association ("ASHA"), an individual with

equivalent education and work experience necessary for the ASHA certificate, or an individual who has completed the academic program and is acquiring supervised work experience to qualify for the certificate. 42 C.F.R. § 440.110(c).

18.     NYSED implemented the School Supportive Health Service Program and developed policy and procedural guidelines to enable providers, such as local school districts, county agencies and individual practitioners access to Medicaid reimbursement under the Federal Medicaid regulations.

19.     At all times relevant, the Relator was the President of CREST, which was a certified provider of special education services for preschool children. Beginning in July 1991 and continuing until 1999, CREST contracted with Jefferson County to provide preschool programs to eligible residents of Jefferson County. At the time that CREST entered into its initial contract with Jefferson County and all renewals thereafter, CREST provided Jefferson County with documentation of the credentials of the personnel who provided speech therapy services to children referred by Jefferson County.

20.     Beginning in 1992, Jefferson County began to seek Medicaid reimbursement for speech pathology services provided in Jefferson County. Pursuant to the contract between CREST and Jefferson County, CREST provided speech education services to children as mandated by the students' respective school districts.

21.     At all times when CREST was providing speech education services to students as directed by the respective school districts pursuant to the contracts with Jefferson County, CREST was paid by Jefferson County for the services rendered by CREST. At some time following payment to CREST, Jefferson County would submit

claims to the New York State Department of Health for reimbursement of speech pathology expenses under Medicaid.

22. Notwithstanding that the speech education services provided by CREST did not meet all the criteria for Medicaid eligibility, from 1993 through at least December 1, 1996 and continuing through and including 1999, Larry Tingley, the Director of the Jefferson County Community Services Board knowingly submitted claims for reimbursement to Medicaid for speech services provided by CREST that were not eligible for reimbursement by Medicaid.

23. Upon information and belief, Jefferson County submitted claims for Medicaid reimbursement for other speech education services provided by other Jefferson County contractors that were also not eligible for reimbursement by Medicaid. Upon information and belief, the total amount of the claims for Medicaid reimbursement submitted by Jefferson County from 1993 to 1999 was approximately $3,480,000.

24. Upon information and belief, each of the Watertown City School District, Jefferson-Lewis BOCES and Indian River Central School District submitted claims for reimbursement by Medicaid for speech pathology services provided by unqualified personnel that falsely certified that the services were in compliance with the applicable rules and regulations.

25. Defendants Hamel, Scalise, Smith and Kendall ignored Federal Medicaid requirements that Health Related Support Services had to be provided by or under the direction of qualified licensed professionals including licensed physicians, speech pathologists, physical therapists and occupational therapists. The individual defendants knowingly permitted the local school districts and municipal agencies to

submit claims for Medicaid reimbursement that had not been determined to be medically necessary or had not been provided by or under the direction of a licensed health care provider.

26.     Following his employment by the State of New York, Defendant Smith began in or about 1996 a consulting business under the name CKBJ Associates. Initially, he provided full-time consulting services to the City of Albany School District. In 1997, 1998 and 1999 Smith conducted a series of seminars across New York State including at locations in Albany, Binghamton, Buffalo, Carle Place, Elmira, Elmsford, Grand Island, Holbrook, Kingston, Lake George, Lake Placid, Mt. Kisco, New Hartford, Olean, Plainview, Rochester, Ronkonkoma, Saratoga Springs, Syracuse and Westbury. Smith boasted to Relator that his seminars reached representatives of school districts and county governments from all 66 of New York State's counties. The advice that Smith provided at these seminars was later proved to be the basis for liability on the part of providers in at least three counties, Jefferson, Lewis and St. Lawrence Counties, including the City of Ogdensburg. The entities that received his advice billed Medicaid for educational services that were not eligible for reimbursement under the Federal Medicaid regulations.

### VI.     CIRRINCIONE REPORTS THAT THE FRAUDULENT ACTIVITY IS OCCURRING STATEWIDE

27.     In July 1996, Cirrincione became aware that Tingley had submitted false claims for Medicaid reimbursement on behalf of Jefferson County Community Services. When Cirrincione learned of facts showing that Tingley had submitted false claims for Medicaid reimbursement on behalf of the Jefferson County Community Services Board and Jefferson County, Cirrincione reported that information to the United

States Department of Health and Human Services, Office of Inspector General, Washington, D.C. ("OIG") and the New York State Attorney General, Medicaid Fraud Control Unit ("MFCU"). In August 1997, Cirrincione met with investigators from the MFCU to discuss information she had regarding false billing for speech therapy services.

28. In December 1998, Cirrincione filed under seal the action entitled *United States ex rel. Hedy M. Cirrincione v. Larry D. Tingley, Jefferson County Community Services Board, Jefferson County, Ogdensburg City School District, and William Smith*, 98 CV 1929 (GLS). In 1999, Cirrincione filed the instant action alleging that school districts and municipalities across New York State were submitting false claims for payment for speech pathology services and other services provided to preschool and school age students. In connection with the filing of the two actions, Cirrincione informed the Department of Justice that the fraudulent billing practices that she had uncovered in Jefferson County were being practiced by school districts and social services agencies across New York State. As a result of Cirrincione's disclosures, the Department of Justice conducted investigations of several school districts, including the Ogdensburg City School District. Following that investigation, the OIG commenced audits of school districts and municipal social services departments across New York State, including the New York City Department of Education, formerly known as the New York City Board of Education. The OIG audits uncovered numerous instances across the state that have corroborated Cirrincione's report that school districts and municipalities across New York State were submitting false claims for payment by Medicaid for speech pathology services. According to the OIG audit reports, a primary

reason for the state-wide and New York City audits was Cirrincione's False Claims Act action.

29. This action was not based upon any public disclosures of information within the meaning of 31 U.S.C. § 3730(e)(4)(A). Notwithstanding the foregoing, through her communications and interactions with Larry Tingley, Jefferson County, William Smith and other defendants and persons, Relator had "direct and independent knowledge" of the allegations at the time she commenced the two False Claims Act actions. Additionally, Relator "voluntarily provided," and offered to provide, this information to the United States Government and the New York State Medicaid Fraud Control Unit before the filing of this complaint. Therefore, to the extent any of the initial allegations are deemed to have been based upon a public disclosure, Relator is an "original source" of this information within the meaning of the False Claims Act and is expressly excepted from its public disclosure bar.

## VII. THE LAW

### A. The False Claims Act

30. The False Claims Act provides, in pertinent part, that:

> (a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government; . . . .
>
> * * *
>
> is liable to the United States Government for a civil penalty of not less than $5,500 and no more than $11,000, plus 3 times the

> amount of damages which the Government sustains because of the act of that person . . . .
>
> (b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C. § 3729.

31. Under the False Claims Act, a "claim" is defined as:

> any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(c).

## VIII.  DAMAGES

32. The United States was damaged because of the acts of the defendants in submitting or causing to be submitted false claims and statements in that the United States paid the defendants for services for which they were not entitled to reimbursement.

## FIRST CAUSE OF ACTION
(All Defendants)
(False Claims Act:  Presentation of False Claims)
(31 U.S.C. § 3729(a)(1))

33. Relator repeats and realleges ¶¶ 1 through 32 as if fully set forth herein.

34. The defendants knowingly (*i.e.*, with actual knowledge, in deliberate ignorance of the truth, or with reckless disregard of the truth) presented or caused to be presented false or fraudulent claims for payment or approval to the United States for services rendered to students that did not comply with the laws, rules and regulations of the Medicaid program.

35. By virtue of the false and fraudulent claims made or caused to be made by the defendants, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,000 to $10,000, or $5,500 to $11,000, for each violation depending upon the date thereof.

**SECOND CAUSE OF ACTION**
(All Defendants)
(False Claims Act: Making or Using False Record or
Statement to Cause Claim to be Paid)
(31 U.S.C. § 3729(a)(2))

36. Relator repeats and realleges ¶¶ 1 through 35 as if fully set forth herein.

37. The defendants knowingly (*i.e.*, with actual knowledge, in deliberate ignorance of the truth, or with reckless disregard of the truth) made or used, or caused to be made or used, false records or statements -- *i.e.*, the false certifications and representations made or caused to be made by the defendants that the services were provided in compliance with all laws and regulations regarding the conditions of participation in and payment by the Medicaid program -- to get false or fraudulent claims paid or approved by the United States.

38. By virtue of the false and fraudulent claims made or caused to be made by the defendants, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,000 to $10,000, or $5,500 to $11,000, for each violation depending upon the date thereof.

## PRAYER FOR RELIEF

WHEREFORE, Relator, on behalf of herself individually, and acting on behalf, and in the name, of the Government of the United States, respectively, demands and prays that judgment be entered against the defendants as follows:

1. On the First and Second Causes of Action under the False Claims Act, as amended, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with all such further relief as may be just and proper.

2. Awarding Relator the maximum amount available under 31 U.S.C. § 3730(d) for bringing this action, namely, 25 percent of the proceeds of the action by judgment or settlement of the claim if the Government intervenes in the matter (or pursues its claim through any alternate remedy available to the Government, 31 U.S.C. § 3730(c)(5)), or, alternatively, 30 percent of the proceeds of the action by judgment or settlement of the claim, if the Government declines to intervene.

3. Awarding Relator all reasonable expenses that were necessarily incurred in prosecution of this action, plus all reasonable attorneys' fees and costs, as provided by 31 U.S.C. § 3730(d).

4. Awarding such other relief for the United States and Relator as this Court deems just and proper.

Dated: New York, New York
December 29, 2005

MENZ BONNER & KOMAR LLP

By: _____
David A. Koenigsberg (512715)

Two Grand Central Tower
140 East 45th Street, 20th Floor
New York, New York 10017
Tel.: (212) 223-2100
Fax: (212) 223-2185
Email: dkoenigsberg@mbklawyers.com

*Attorneys for Plaintiff-Relator Hedy M. Cirrincione*

TO: Carol L. Wallack, Esq.
Attorney, U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
601 D Street, N.W., Room 9218
Washington, D.C. 20004
Tel.: (202) 616-0345
Fax: (202) 305-7797
Email: carol.wallack@usdoj.gov

*Attorney for the United States of America*